Submitted June 29, affirmed October 13, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL ALLEN ROSENBOHM,
*Defendant-Appellant.*

Multnomah County Circuit Court
070343090; A136812

241 P3d 344

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Appellate Division, Office of Public Defense Services filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

WOLLHEIM, P. J.

### WOLLHEIM, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants, ORS 813.010. He contends that he did not have a fair trial because the prosecutor stated in rebuttal closing argument that, to the extent an Intoxilyzer errs, it errs in favor of defendant and that defendant's blood alcohol content "could have been as high as .40 percent," which was not supported by evidence at trial. Because the evidence at trial demonstrated that defendant drove while impaired by intoxicants, and because the court instructed the jury that the lawyers' statements were arguments, not evidence, we conclude that the prosecutor's statements were unlikely to prejudice the jury unfairly. Accordingly, we affirm.

The facts are not in dispute. February 23, 2007, was a dark and stormy night. A police officer saw a car driving on a public highway with only its parking lights on. The officer turned on his overhead lights and sirens to pull defendant over. Defendant pulled over onto the left side of the road, which was unusual. The officer noticed the odor of alcohol coming from the car and observed that defendant had "red, watery, bloodshot eyes."

When the officer asked defendant for his license and proof of insurance, defendant fumbled around with his wallet looking for his license, which was in plain view. The officer asked defendant if he had consumed any alcoholic beverages before driving, and defendant said that he had "consumed a few beers * * *." Defendant later admitted that he had consumed a "six pack" before driving. The officer noticed that defendant spoke with thick speech, he had difficulty pronouncing some words, and his lips and tongue stuck together while he was speaking.

The officer asked defendant to perform field sobriety tests. Defendant stepped out of his car with a "methodical walk," being very careful about placing one foot in front of the other. When he stopped, defendant had a slight sway and had difficulty maintaining his balance. The officer administered three field sobriety tests and, after defendant failed each one, arrested him for driving under the influence of intoxicants.

At the precinct, defendant consented to having his breath tested. The result of the Intoxilyzer test was .10 percent blood alcohol content.

At trial, the officer testified consistently with the facts stated above. An expert forensic scientist testified that, if the Intoxilyzer was inaccurate, it would be less than .01 percent high and as much as .02 percent low.

In rebuttal closing argument, the prosecutor argued first that, if an Intoxilyzer errs, it errs in defendant's favor, and immediately thereafter, that "it appears that defendant's blood alcohol content could have been as high as .40 percent." Defense counsel objected to the latter statement, arguing that the prosecutor's statement was not based on evidence in the record. The court stated, "Counsel, you are disrupting the state's rebuttal, you will have a continuing objection. I am going to order you to not make any objections during the remainder of the state's rebuttal argument." The jury found defendant guilty of one count of driving under the influence of intoxicants.

In a single assignment of error, defendant asserts that the trial court erred when it allowed the prosecutor to argue that (1) if an Intoxilyzer errs, it errs in defendant's favor, and (2) defendant's blood alcohol content could have been as high as .40 percent. The state concedes that defendant objected to the second statement, but argues that defendant did not preserve his argument as to the first. Under the circumstances, however, where the trial court expressly ordered the defense attorney not to make any more objections, we conclude that both arguments were sufficiently preserved.

Thus, we turn our attention to whether the trial court erred when it allowed the prosecutor's statements in rebuttal. "A trial court has broad discretion in its control of the arguments of counsel. However, its discretion is not unbounded. We must reverse when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly." *State v. Bolt*, 108 Or App 746, 749, 817 P2d 1322 (1991). It is improper for counsel to rely on facts that are not in the record during closing argument. *Id*. But

generally, "a jury instruction is adequate to cure any prejudice caused by a prosecutor's misstatement." *State v. Worth*, 231 Or App 69, 75, 218 P3d 166 (2009).

The prosecutor's closing argument focused on defendant's actions when the officer pulled him over and on the Intoxilyzer result that indicated a blood alcohol content of .10 percent. The defense argued that defendant performed well on the field tests and that the Intoxilyzer result was unreliable. In rebuttal, the prosecutor again focused on the result of the Intoxilyzer test and argued:

> "[Y]ou heard today that to the extent that [an Intoxilyzer] can be inaccurate, it underestimates a person's blood-alcohol content. In fact, it appears that defendant's blood alcohol content could have been as high as .40 percent.
>
> "Because defendant blew a .10, he was driving under the influence of intoxicants. Consequently, I ask you to return a guilty verdict."

■ First, we consider whether the prosecutor misstated the evidence when he said that, if an Intoxilyzer errs, it errs in defendant's favor. At trial, the expert testified that, to the extent that the Intoxilyzer could be inaccurate, it would be less than .01 percent high and as much as .02 percent low. The expert also testified that "the instrument is actually set up to give benefit of doubt to the defendant." Based on this evidence, the prosecutor's argument that an Intoxilyzer is more likely to err in defendant's favor is a valid argument. The trial court did not err in allowing this argument based on the evidence in this record.

■■ The state concedes that the prosecutor's statement that "defendant's blood alcohol content could have been as high as .40 percent" was improper because there was no evidence in the record to support that statement. The question on appeal is whether that statement was likely to prejudice the jury unfairly. Based on the expert testimony and the other evidence of defendant's intoxication, we conclude that the statement was not likely to prejudice the jury unfairly.

The result of defendant's Intoxilyzer test, which was admitted at trial, was .10 percent. Based on the evidence at trial, the possible range of defendant's blood alcohol content

was .09 to .12 percent, all of which is higher than .08 percent, the legal limit. There was also significant evidence of defendant's impairment aside from the result of the Intoxilyzer test. The officer testified that (1) defendant was driving with only his parking lights on and pulled over to the left side of the road instead of the right; (2) an odor of alcohol was coming from the car; and (3) defendant had "red, watery, bloodshot eyes." Defendant spoke with thick speech, he had difficulty pronouncing some words, and his lips and tongue stuck together while speaking. He also fumbled around with his wallet looking for his license, even though it was in plain view. When the officer asked defendant to perform field sobriety tests, he failed all three tests. Finally, defendant admitted to drinking a "six pack" before driving. Thus, the erroneous statement that defendant's blood alcohol content could have been as high as .40 percent, while unfortunate, would not have influenced the jury's verdict.

■     Moreover, the trial court gave the jury the standard instruction that the lawyers' statements were arguments, not evidence. The trial court also instructed the jury, "If your recollection of the evidence is different from the lawyers' recollection, you must [rely] on your own memory." We presume that jurors follow a trial court's instructions. *State v. Thompson*, 328 Or 248, 271, 971 P2d 879 (1999). In the context of this case, we conclude that the jury instructions were adequate to cure any prejudice caused by the prosecutor's misstatement in this case. *Worth*, 231 Or App at 75. And, to the extent that the prosecutor's statements were different from the evidence presented at trial, we presume that the jurors relied on their own memory of the evidence at trial.

Affirmed.