NELSON, J.
*717 **762 This appeal requires us to consider when an out-of-court statement reflecting a declarant's state of mind is hearsay and, if so, when the statement falls within a hearsay exception. During a criminal trial, the court admitted some email statements written by the victim, but excluded others as hearsay. The Court of Appeals reversed, concluding that the excluded email statements were either not hearsay or were hearsay that fell within an exception to the hearsay rule for statements offered to prove the declarant's state of mind. For the reasons below, we affirm the decision of the Court of Appeals.
I. BACKGROUND
Defendant admitted that, on March 13, 2010, he shot and killed Greenspan. Defendant was a drug dealer, and Greenspan was a naturopathic physician who had invested in defendant's drug dealing operation. The state argued that defendant killed Greenspan after robbing him of $20,000. But defendant maintained that the state had it backwards: Greenspan tried to rob defendant of $20,000, and defendant shot Greenspan in self-defense.
To establish Greenspan's motive for the robbery, defendant argued that Greenspan viewed himself as being in significant financial trouble and in desperate need of money. As proof, defendant offered, among other things, 11 emails that Greenspan wrote in the months leading up to his death. In those emails, Greenspan described his financial troubles, which he attributed to employee theft and a decline in his business revenue. He also described his efforts to address those troubles.
Defendant moved in limine to admit the emails. The state objected, arguing that the emails were not relevant and were hearsay. Defendant contended that the emails were relevant to Greenspan's motive to rob defendant and that the emails were being offered for a nonhearsay purpose-namely, Greenspan's state of mind.
At a hearing on defendant's motion in limine , the trial court stated that it largely agreed with defendant's **763 arguments. The trial court said that, "if they're correctly tailored, [the emails] are going to come in under [defendant's] theory" and would not be "too prejudicial." The court, however, deferred ruling on the admissibility of the emails because it needed more time to review each email to determine how they would have to be tailored to fit within defendant's theory.
Of the 11 emails that defendant sought to admit, the trial court excluded four in their entirety. Greenspan sent those four emails between November 29, 2009 and January 6, 2010. The emails detailed Greenspan's debts, his diminishing business revenue, his efforts to raise income by selling his gold, and his research into bankruptcy options. The trial court concluded that those emails did not establish Greenspan's state of mind because they were "really reciting facts or what he was planning on doing." The trial court also concluded that those emails were not "terribly relevant given" that the shooting occurred months later, on March 13, 2010.
The court partially admitted and partially excluded four other emails, those sent between February 13 and February 26, 2010. The excluded portions detailed Greenspan's reduced business income, his upcoming debt obligations, and his efforts to recover money from employees who he accused of stealing from him. The court explained that the excluded portions did not reflect Greenspan's state of mind because they either recited facts or described Greenspan's plans.
In addition to the four emails that the court partially admitted, the court also entirely admitted the portions of three emails that defendant offered from February 2 and 5, 2010, and March 5, 2010. In doing so, the trial court concluded that the admissible statements were relevant and either reflected Greenspan's state of mind or were necessary context to understand the otherwise admissible portions.
Defendant presented the admitted emails to the jury as part of his case for self-defense. The jury, however, rejected defendant's *718 self-defense argument and convicted defendant of one count of aggravated murder, two counts of the lesser-included charge of murder, two counts of **764 first-degree robbery, and one count of felon in possession of a firearm.[1]
Defendant appealed, raising many issues. The Court of Appeals focused on the trial court's exclusion of the email statements. The Court of Appeals held that the trial court erred in excluding the email statements, because the statements were relevant and not barred by the hearsay rule. According to the Court of Appeals, the excluded statements were relevant because they tended to prove Greenspan's state of mind at the time of the shooting-namely, that he was desperate for money. State v. Bement , 284 Or. App. 276, 294, 391 P.3d 838 (2017).
On whether the excluded statements were barred by the hearsay rule, the Court of Appeals made two rulings. First, although the court held that some statements were hearsay, the court still held that those statements were not barred, because they fell within the hearsay exception for statements reflecting a declarant's state of mind, OEC 803(3). Id. at 295, 391 P.3d 838. Second, the court held that statements that "merely provided context or background" for other admissible statements were not hearsay at all and so should not have been barred by the hearsay rule. Id. As a result, the Court of Appeals held that the hearsay rule barred none of the excluded email statements. The Court of Appeals also held that the trial court's error in excluding the emails was not harmless. Id. at 300, 391 P.3d 838. The state petitioned this court for review, which we allowed.
II. ANALYSIS
On review, the state does not challenge the Court of Appeals' holding that the emails were relevant. We therefore assume that all the excluded statements were relevant. The state also does not challenge the Court of Appeals' holding that statements providing context were not hearsay. Instead, the state argues that the Court of Appeals misapplied the state-of-mind exception to the general bar on hearsay. The state further argues that, even if the Court of Appeals correctly concluded that the trial court erred **765 by refusing to admit the emails as hearsay, the Court of Appeals incorrectly concluded that the trial court's error was not harmless. Defendant disagrees with most of the state's arguments and argues that the statements were not hearsay in the first place.
A. Legal Framework
To identify the exact points on which the parties disagree, we first set out the legal framework. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3).[2] A statement is an assertion, whether oral, written, or nonverbal conduct intended as an assertion. See OEC 801(1) (defining "statement" as either "[a]n oral or written assertion" or "[n]onverbal conduct of a person, if intended as an assertion"). Thus, hearsay is an out-of-court statement that a proponent offers to prove a fact that the declarant asserted in the statement.
The hearsay rule bars the admission of hearsay unless the statement falls within a hearsay exception. OEC 802. Among those hearsay exceptions is the state-of-mind exception. OEC 803(3). Under the state-of-mind exception, "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition" is excluded from the general bar on hearsay. OEC 803(3). That exception has a limit, however, and does not apply to "a statement of memory or belief to prove the fact remembered or believed." Id.[3] Therefore, under the state-of-mind *719 exception, a statement asserting a declarant's state of mind may not be offered to prove the facts underlying the declarant's state of mind.
As noted, the Court of Appeals held that the excluded email statements were hearsay but fell within the state-of-mind exception. On whether the emails were hearsay, the Court of Appeals first considered what defendant offered the emails to prove and held that he offered them to **766 prove Greenspan's state of mind-namely, that he viewed himself as being in serious financial trouble. See Bement , 284 Or. App. at 289, 391 P.3d 838 ("[D]efendant offered the emails to show [Greenspan]'s state of mind at the time of the shooting."). And the court then held that the emails were hearsay because, in the emails, Greenspan asserted his belief that he was in serious financial trouble.
Both of those conclusions carry over to the court's analysis of whether the emails fell within the state-of-mind exception. The court held that the emails were "[a] statement of the declarant's state of mind," OEC 803(3), because, in the emails, Greenspan asserted his belief that he was in serious financial trouble. Bement , 284 Or. App. at 295, 391 P.3d 838. The court did not expressly address the limit on the state-of-mind exception for "a statement of memory or belief to prove the fact remembered or believed." OEC 803(3).[4] But, as part of its hearsay analysis, the court held that defendant offered the emails to prove that Greenspan believed that he was in financial trouble and not to prove that Greenspan was, in fact, in financial trouble. Bement , 284 Or. App. at 289, 391 P.3d 838. Based on that analysis, we can presume that the Court of Appeals concluded that defendant did not offer the emails to prove the fact believed-i.e. , that Greenspan was, in fact, in financial trouble.
With that framework in mind, we turn to the parties' arguments. The state is petitioner on review and principally argues that the Court of Appeals erred by misapplying the state-of-mind exception to the general bar on hearsay. But, because hearsay exceptions apply only to hearsay, we begin by addressing whether the excluded email statements are hearsay and, if so, why.
B. Hearsay
As noted above, hearsay is an out-of-court statement that a proponent offers to prove a fact that the declarant asserted in the statement. There are two central questions in applying that definition: what fact is the proponent trying to prove and what facts did the declarant assert in **767 the statement. If the answers to those questions overlap, then the statement is hearsay. See Christopher B. Mueller & Laird C. Kirkpatrick, 4 Federal Evidence § 8:14, 93 (4th ed. 2013) ("[I]t is hearsay if there is a match between what the proponent seeks to prove and what the declarant says[.]").
1. What fact was defendant trying to prove?
The parties first dispute what fact the proponent sought to prove. Here, the proponent was defendant. And defendant contends that he offered the excluded statements to prove Greenspan's state of mind-namely, that Greenspan viewed himself as in financial trouble and in desperate need of money. Defendant maintained that Greenspan's state of mind provided him with the motive to rob defendant and that the attempted robbery led to defendant shooting Greenspan in self-defense. The state contends that defendant offered the emails to prove Greenspan's actual financial troubles and not to prove that Greenspan viewed himself as in financial trouble.
The record leaves no doubt that, contrary to the state's contention, defendant offered the emails to prove Greenspan's state of mind. Defendant sought to admit the emails in a motion in limine . In that motion, defendant noted that the emails contained statements about Greenspan's financial trouble. But defendant explained that the probative value from those statements did not depend on whether the statements themselves were *720 true. Instead, defendant argued that "[t]he statements are probative because David Greenspan believed them to be true." (Emphasis in original.) Defendant went on:
"Whether he actually was going bankrupt or whether employees actually were stealing from him does not matter. It is the fact that he believed th[em] to be true which makes the statements relevant and probative[.]
"* * * * *
"[S]tatements David Greenspan made in which he stated his belief that he was going bankrupt are also not offered to prove that he was actually going bankrupt. Rather they are offered as circumstantial evidence of David Greenspan's state of mind-i.e., that because he believed he was going **768 bankrupt (whether he was or wasn't is irrelevant) he had the motive to act desperately and violently to get money from [defendant]."
(Emphasis in original.)
Defendant maintained those positions at the hearing on his motion in limine : "[I]t doesn't matter with whether or not * * * Greenspan was actually bankrupt or was actually-actually financially in ruin, whether he was-these people were actually stealing from his office. None of that matters. All that matters * * * is that he believed that because it goes directly to his motive on March 13th, 2010."
The state's argument to the contrary does not focus on the facts that defendant said that he was trying to prove with the excluded email statements. Instead, the state's argument focuses on defendant's use of the admitted email statements. According to the state, defendant used the admitted email statements to establish facts other than Greenspan's state of mind. Specifically, the state argues that defendant used the admitted email statements to prove that Greenspan was in financial distress and not just that Greenspan believed that he was in financial distress.
The state offers little record evidence to support its argument. In any event, the state's argument is not well taken. To determine whether a statement is hearsay, the trial court is to consider the purposes for the statement that the proponent offers. The risk that the factfinder may use the statement for other purposes is not material to the hearsay determination itself. See State v. Mayfield , 302 Or. 631, 641, 733 P.2d 438 (1987) (noting that, when a trial court admits statements for a nonhearsay purpose, the statements "should not be converted from non-hearsay to hearsay" simply because there is a risk that the jury might use the statements for an improper hearsay purpose).
Instead, a court may address that risk of misuse through a limiting instruction to the jury. See OEC 105 ("When evidence which is admissible *** for one purpose but not admissible *** for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper **769 scope and instruct the jury accordingly."); see also State v. Voits , 186 Or. App. 643, 660, 64 P.3d 1156 (2003), rev den, 336 Or. 17, 77 P.3d 320 (2003) ("A limiting instructing often is an appropriate means to safeguard against jury misuse of evidence that is admissible to show a declarant's state of mind but is inadmissible for other purposes."). Here, the state sought and received a limiting instruction. The trial court instructed the jury that the email statements were admitted only to prove "Greenspan's state of mind."
Additionally, if the risk of misuse is high enough, and the misuse relates to a fact that is consequential enough, a court may exclude otherwise admissible statements under the "balancing test set forth in OEC 403." Mayfield , 302 Or. at 641, 733 P.2d 438 ; see OEC 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."). The state did not ask the trial court to exclude any email statements on that ground.[5]
*721 Based on the record before us, we conclude that defendant offered the excluded statements to prove Greenspan's state of mind-namely, that Greenspan believed that he was in substantial financial trouble and in desperate need of money.
2. What facts did Greenspan assert?
Because defendant offered the excluded email statements to prove Greenspan's state of mind, the statements are hearsay if, in the emails, Greenspan asserted the same state of mind that defendant was trying to prove. The parties presume that Greenspan did not assert his state of mind in the emails and that the emails, therefore, are not hearsay. That presumption is not sound. On this issue, the parties misread the emails and misunderstand how courts determine the content of statements.
**770 In some excluded email statements, Greenspan directly asserted his state of mind. For example, in one email, Greenspan stated, "I understand that you [Greenspan's former partner] want me to get you [$]10k." That statement directly asserts what Greenspan believed-i.e. , Greenspan's state of mind. That statement asserts that Greenspan believed that his former partner was seeking $10,000 from him. Statements directly asserting Greenspan's state of mind are hearsay because defendant offered them to prove that Greenspan had that state of mind.
Most of the excluded email statements, however, are not direct statements of Greenspan's state of mind, because they are not prefaced with phrases like "I understand," "I think," or "I believe." Instead, most of the excluded emails are simply bare factual statements by Greenspan about his financial condition. For example, in the same email to his former partner, Greenspan stated, "I've taken a total of [$]9000 GROSS pay in the last 4 months."
The parties presume that those statements assert only those bare facts and thus do not assert Greenspan's state of mind. And so the parties read the above statement as directly asserting that Greenspan earned only $9,000. But the parties fail to consider whether the statement should also be read as indirectly asserting that Greenspan believed that he earned only $9,000-i.e. , Greenspan's state of mind. If the above example asserts that Greenspan believed that he earned only $9,000, then the statement is hearsay when offered to prove how Greenspan viewed his financial situation, the reason defendant offered the statements here.
This court has addressed that issue before. In State v. Clegg , 332 Or. 432, 31 P.3d 408 (2001), this court explained that, unless context suggests otherwise, a bare factual statement is both a direct assertion of the fact and an indirect assertion that the declarant believes that fact to be true. There, the state charged the defendant with participating in his wife's murder. The victim had been shot and killed by two assailants while at work one morning. Id. at 434, 31 P.3d 408. The state did not allege that the defendant was one of the shooters. Rather, the state alleged that the defendant had hired the shooters and helped them plan the murder. Id. at 435-36, 31 P.3d 408.
**771 In support of that allegation, the state offered testimony from a coworker of the victim. The coworker testified that, just a few minutes before the murder, the victim had hung up the phone and stated that the defendant had called her. The victim reported to her coworker that, during the call, she told the defendant that an acquaintance was going to take her to the bank. The victim further reported to the coworker that defendant told her not to go the bank with the acquaintance, that he would take her out to lunch, and that they could go to the bank at that time. Id. at 436-37, 31 P.3d 408.
The court in Clegg considered whether those statements by the victim to her coworker asserted the victim's state of mind. In doing so, the court addressed the question we face: whether bare statements of fact indirectly assert the declarant's state of mind. The court addressed that question as part of its analysis of whether those statements *722 fell within the state-of-mind exception under OEC 803(3), after determining that the statements were hearsay. We encounter that issue to determine whether the excluded email statements are hearsay in the first place. Still, the court's resolution of that issue in Clegg applies equally here.
In assessing whether the victim's statement to her coworker asserted the victim's state of mind, the court in Clegg acknowledged that the statements were "not direct commentary on her 'state of mind.' " Id. at 441, 31 P.3d 408 (emphasis in original). Yet the court explained that "even if a statement merely reflects the declarant's state of mind or reasonably supports an inference as to the declarant's state of mind, it constitutes an assertion of the declarant's state of mind for the purposes of OEC 803(3)." Id. The court concluded that the victim's statement to her coworker included an indirect state-of-mind assertion: her plan to go to the bank. Id.[6]
To support that analysis, this court cited Christopher B. Mueller and Laird C. Kirkpatrick, 4 Federal Evidence § 438, 417 (2d ed. 1994). In considering federal hearsay rules that are identical to Oregon's hearsay rules, the **772 authors compared statements directly describing the declarant's state of mind with "fact-laden statements" that do not directly describe the declarant's state of mind. As an example of direct state-of-mind statements, the authors used the statement "I want another car." As an example of fact-laden statements, the authors used "My car is old and spends too much time in the shop." The authors contended that, unless context suggests otherwise, both statements could be understood as asserting the declarant's state of mind-namely, that the declarant wants a new car. According to the authors, "fact-laden statements are usually deliberate expressions of some state of mind" and "[a]ll statements should be read with reference to the expressive or communicative intent of the speaker for purposes of applying the hearsay doctrine." Id.
That analysis of indirect assertions tracks the authors' treatment of the same issue in the context of determining whether a statement is hearsay in the first place. There, the authors explained that "[a]n indirect assertion is hearsay if the speaker means to assert the point for which his statement is offered, and the task of the court is to figure out his intended meaning, regardless of the so-called 'plain meaning.' " Id. § 383 at 72. As it related to indirect state-of-mind assertions, the authors considered whether the statement " 'that man tripped on the curb' " would be hearsay if offered "as proof that the speaker believed the man tripped on the curb." Id. § 383 at 73. The authors concluded that it would be hearsay: "Even though the actual words do not include expressions like 'I think' or 'I believe,' still they imply (in the strong sense of intentionally expressing) that [the speaker] entertains these thoughts and beliefs, and are hearsay when offered for this purpose." Id. ; see also id. § 389 at 95 ("[E]ven bare factual statements ('it is raining') assert what the speaker knows or thinks (she thinks it is raining)[.] *** These ideas are implicit in almost all statements. They are part of what the speaker or writer intends to convey, even if they are not 'put into so many words.' ").
The authors maintained that a contrary rule-one that did not consider the indirect state-of-mind assertions in bare factual statements-would require treating statements differently based on whether the statements started with **773 phrases such as "I think" or "I believe," even though such phrases usually go unstated because speakers and listeners know them to be implied. According to the authors, such a rule would "make[ ] the hearsay doctrine capricious and silly, because the result [would] turn[ ] on inconsequential changes in the form of expression, while the hearsay risks and intended meaning [would] stay the same." Id. § 383 at 72-73.
The authors also explained that treating an indirect state-of-mind assertion as a statement imposes sensible limits on the use of those statements that would not exist under the contrary rule:
*723 "[N]onhearsay treatment permits unlimited use: If the statement that the man tripped is nonhearsay circumstantial evidence of the woman's belief, the proponent can urge that her belief shows the man tripped. *** Hearsay treatment requires the proponent to invoke the state-of-mind exception to use such statements to prove what she thought, and this exception does not allow use of a statement to prove events giving rise to state of mind."
Id. § 383 at 74 n. 6.
We agree with that analysis and follow this court's adoption of it in Clegg . We therefore conclude that Greenspan's bare factual statements describing his significant financial troubles are implied assertions about his state of mind-specifically, that he believed that he had significant financial troubles.
The excluded emails also include statements that superficially appear to be of a different character. For example, some statements relate to Greenspan's current conduct, such as "I have been liquidating my gold." Other statements describe Greenspan's plans for his medical practice, such as "This is a huge decision to walk away, even though I might not have a choice. I'm giving 8-9 days to work a plan/decision point."
The analysis, however, is the same for those statements as for the bare factual statements. The point of Clegg is that a statement directly asserting one fact may also be a statement indirectly asserting another fact. Both direct **774 assertions and indirect assertions count equally when determining the content of a statement for hearsay purposes.
When read in context, the above statements may reasonably be understood as Greenspan asserting his belief that he was in serious financial trouble and in desperate need of money. Greenspan made the statement "I have been liquidating my gold" to his former partner. A couple of months earlier, he had told her that "I might need to liquidate my gold just to stay solvent." And he stated that he was considering walking away from his medical practice in the context of an email in which he discussed filing for bankruptcy and stated that his practice was "no longer paying me anything close to what I need to live on." Thus, through those statements, Greenspan could reasonably be understood as asserting that he believed that he was in serious financial trouble and in desperate need of money.
In sum, we conclude that the excluded email statements are hearsay because they were offered for the truth of the matter asserted. Defendant offered the statements to prove that Greenspan believed that he was in significant financial trouble. And, through the emails, Greenspan both directly and indirectly asserted that he believed that he was in significant financial trouble. Because the emails asserted the same fact that defendant was trying to prove, the emails are hearsay. We therefore turn to whether the emails fall within the state-of-mind exception.
C. Scope of the State-of-Mind Exception
As described above, the state-of-mind exception applies to "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition." OEC 803(3). That exception is, however, subject to a limit: other than in cases involving wills, the state-of-mind exception does not apply to "a statement of memory or belief to prove the fact remembered or believed." Id. The state's argument focuses on that limit. According to the state, that limit means that the state-of-mind exception allows only statements that are "direct assertions of the declarant's contemporaneous state of mind, without reference to externally observed events." And, the state argues, a proponent cannot **775 "offer[ ] facts remembered or believed as a way to explain a particular state of mind."
In support of that reading, the state relies on decisions applying the identical limit on the federal state-of-mind exception, FRE 803(3). For example, the state relies on United States v. Cohen , 631 F.2d 1223 (5th Cir. 1980). In that decision, the court created a distinction between "conditions" and "beliefs." Id. at 1225. The court maintained that "conditions" are the declarant's state of mind, while "beliefs" are the reasons why the declarant had that state of mind. According to that court, a statement describing a "condition"
*724 falls within the state-of-mind exception. Id. But a statement describing a "belief" is outside the state-of-mind exception because it is a statement of memory or belief to prove the fact remembered or believed:
"[T]he state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind. If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition-'I'm scared'-and not belief-'I'm scared because Galkin threatened me.' "
Id.
The other cases that the state cites apply the same distinction between conditions and beliefs. Some cases, such as United States v. Fontenot , 14 F.3d 1364, 1371 (9th Cir. 1994), rely on the above quote from Cohen . Other cases simply apply its reasoning. See, e.g. , United States v. Ledford , 443 F.3d 702, 709 (10th Cir. 2005) ("Case law makes it clear that a witness may testify to a declarant saying 'I am scared,' but not 'I am scared because the defendant threatened me.' The first statement indicates an actual state of mind or condition, while the second statement expresses belief about why the declarant is frightened.").
We reject the state's reliance on that line of cases. The distinction between conditions and beliefs is not useful, and commentators have widely dismissed that mode of analysis. See Michael H. Graham, 7 Handbook of Federal Evidence § 803:3, 160 n. 21 (8th ed. 2016) ("The [ Cohen ]
**776 court's conclusion that factual assertions contained in statements of then existing state of mind are inadmissible is overly broad and incorrect."); Mueller & Kirkpatrick, 4 Federal Evidence § 8:72 at 644 (4th ed. 2013) (citing Cohen as showing that "[s]ometimes it is mistakenly thought that the exception does not apply, either because fact-laden statements do not formally assert state of mind or because the exception bars use of statements to prove the acts, events, or conditions they report"); id. § 8:71 at 623 (citing Fontenot as an example of an opinion that is "truly preposterous in [its] reading of the evidence that is offered and the meaning of the exception"); Charles Allen Wright & Jeffrey Bellin, 30B Federal Practice & Procedure: Evidence § 6835, 313 (2017 ed) (describing Fontenot as a "hyper-technical analysis" that "relies on wordplay not legal reasoning").
To start, the court in Cohen misread the limit on the state-of-mind exception. The court applied the limit to the statement "I'm scared because Galkin threatened me" because the court determined that the statement asserted a belief. But the limit on the state-of-mind exception does not apply to all statements of belief. Instead, the limit applies only to "a statement of memory or belief to prove the fact remembered or believed ." OEC 803(3) (emphasis added).
As a result, whether the limit applies turns on what the proponent is trying to prove. The limit applies only if the proponent is offering the statement of belief to prove the truth of the historical facts that the declarant believed. And the limit does not apply if the proponent is using the statement of belief to prove that the declarant believed certain historical facts to be true-i.e. , to prove the declarant's state of mind. See Wagner v. Cty. of Maricopa , 747 F.3d 1048, 1053 (9th Cir. 2013) ("The bar applies only when the statements are offered to prove the truth of the fact underlying the memory or belief."); see also Wright & Bellin, 30B Federal Practice & Procedure: Evidence § 6835 at 315 ("[E]ven statements of memory or belief can be offered under the exception so long as they are not offered to prove the fact remembered or believed."); Mueller & Kirkpatrick, 4 Federal Evidence § 8:73 at 658-59 (4th ed. 2013) ("Applying the exception, including the bar against using statements to prove memory in support of backward-looking inferences, turns on the **777 purpose for which a statement is offered and its likely effect on the factfinder.").
So understood, that limit prevents a proponent from asking the factfinder to infer that some event happened based on the fact that the declarant remembered the event happening. See FRE 803 Advisory Committee Notes to subsection (3) (1972) ("The exclusion of *725 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."); see also Edward W. Hinton, States of Mind and the Hearsay Rule , 1 U Chi. L. Rev. 394, 421-23 (1934) ("The point here is not how recollection or belief may be proved, but the step from recollection to the thing recalled-from belief to the existence of the thing believed[.] *** If the courts should sanction the inference from the recollection of the unsworn observer to the reality of the thing remembered, they would practically abolish the hearsay rule altogether[.]"), cited in FRE 803 Advisory Committee Notes to subsection (3).
There is another, deeper flaw in the Cohen court's analysis made apparent by focusing on what the proponent is using the statement to prove. In considering the statement "I'm scared because Galkin threatened me," that court broke down the statement into only two direct assertions: (1) "I'm scared," which is a state of mind; and (2) "Galkin threatened me," which is a statement of historical fact. But, as noted above, a proponent may use a statement for its indirect assertions. In addition to the two direct assertions, a factfinder could understand the statement "I'm scared because Galkin threatened me" as indirectly asserting that the declarant is not just scared, but scared of Galkin. Being scared of Galkin is also a state of mind, one that is more specific than simply being scared generally. See Wright & Bellin, 30B Federal Practice & Procedure: Evidence § 6835 at 311 ("It is natural enough, and perfectly consistent with Rule 803(3), to say that a declarant's state of mind was that she was in fear of her husband, rather than that she was generically fearful.").
**778 Using that statement to prove that the declarant was scared of Galkin is not categorically distinct from using the statement "I'm scared" to establish that the declarant was scared generally. In both cases, the proponent is offering the statement to establish the declarant's state of mind. The contrary analysis represented by Cohen -and advanced by the state here-"bespeaks a preoccupation with surface meaning and gives too little attention to the speaker's intent and the nature of language, ignoring the more realistic interpretations" that context might suggest. Mueller & Kirkpatrick, 4 Federal Evidence § 8:72 at 644 (4th ed. 2013).
We therefore apply the limit to the state-of-mind exception by focusing on what the proponent is using the statement to prove and not by focusing on whether the statement directly asserts a state of mind or directly asserts a historical fact. See id. § 8:73 at 659 ("Use counts more than form and substance because fact-laden statements usually shed light on state of mind, and statements describing mental conditions usually suggest factual inferences."). The limit applies if the proponent is offering the statement of belief to prove the truth of the historical facts that the declarant believed, but not if the proponent is trying to prove the declarant's state of mind.
Applying that standard to this case is simple. As we explained above, defendant offered the excluded email statements to prove Greenspan's state of mind-namely, that Greenspan believed that he was in substantial financial trouble and in desperate need of money. Defendant did not offer the statements to prove that Greenspan was actually in substantial financial trouble and in desperate need of money. As a result, we conclude that the email statements at issue fall within the state-of-mind exception and are not excluded by the limit on "statement[s] of memory or belief to prove the fact remembered or believed." OEC 803(3).
The state raises concerns about a factfinder's ability to distinguish between those uses. But those concerns do not justify the state's narrow reading of the state-of-mind exception. Instead, a court may appropriately address those concerns by providing limiting instructions, scrutinizing the relevance of the statements, and weighing the probative **779 value of the statements against the risk of prejudicial misuse under OEC 403. See James J. Duane, *726 The Admissibility of Memories and Beliefs: The Hearsay Exception That Even the Best Judges Frequently Misunderstand , 22-SUM Crim. Just. 16 (2007) (discussing relevance issues); Mueller & Kirkpatrick, 4 Federal Evidence § 8:72 at 643-44 (4th ed. 2013) (discussing prejudicial misuse of statements in this context).
For these reasons, we conclude that the trial court erred in excluding the email statements under the hearsay rule. The emails are hearsay because they assert Greenspan's belief that he was in financial trouble and because defendant offered them to prove that Greenspan believed that he was in financial trouble. The emails, however, fall within the state-of-mind exception because they are statements of Greenspan's state of mind and defendant offered them to prove that state of mind.
D. Harmless Error
Although we conclude that the trial court erred in excluding the email statements under the hearsay rule, that conclusion does not end our analysis. The state argues that, even if the trial court erred, defendant's judgment of conviction should not be reversed because the trial court's error was harmless.
"It is axiomatic that evidentiary error does not require reversal if it is harmless[.]" State v. Henley , 363 Or. 284, 307, 422 P.3d 217 (2018). To determine whether an error is harmless, we do "not ask whether the evidence of guilt is substantial or compelling, but rather whether the trial court's error was likely to have influenced the verdict." Id. An evidentiary error is more likely to influence a verdict if the error relates to "a central factual issue in this case," and is less likely to influence a verdict if it relates to a "tangential issue." State v. Marrington , 335 Or. 555, 566, 73 P.3d 911 (2003). But even when evidence relates to a central factual issue, its exclusion may be harmless if it is "merely cumulative of," instead of "qualitatively different than," evidence presented to the factfinder. State v. Davis , 336 Or. 19, 34, 77 P.3d 1111 (2003).
**780 The Court of Appeals held that the excluded emails were relevant to a central factual issue. Bement , 284 Or. App. at 298, 391 P.3d 838. And the court rejected the state's argument that the emails were merely cumulative of other admitted evidence. Id. at 299, 391 P.3d 838. According to that court, "[a] jury could infer that the excluded email statements depict increasing desperation about his perceived financial straits, and that inference would come in part from seeing the historical progression of [Greenspan]'s distress over time." Id. And the court held that the historical progression of Greenspan's distress could not be adequately established based on the admitted emails alone.
On review, the state does not dispute that the excluded emails relate to a central factual issue. Instead, the state argues only that the excluded emails are cumulative of the emails that the trial court admitted. The state points out that the admitted emails include statements such as "I'm in a major pinch and I can only pay for essentials"; "I have incurred a 75% reduction in income since 2008"; "I am drowning in debt"; "i'm nearly bankrupt personally and in biz bcz my income is down 75%."
Like the Court of Appeals, we reject the state's argument. Those admitted statements are all from February and March 2010 and give only a small picture of Greenspan's financial distress. The admitted statements fail to convey the progression of Greenspan's desperation. The excluded statements assert that Greenspan's business income was not just down as compared to 2008, but also that his business income was continuing a downward trajectory. In a November 2009 excluded statement, he said that his practice was down another 33 percent. Then in a December 2009 excluded statement, he said that "[t]he trend has accelerated," and that he has been "shaving [his] salary and eliminating [his] distributions to stay solvent." And in a January 2010 excluded statement, he said that, over the past three months, his debt has "accelerated."
The admitted statements also fail to communicate the increasing financial pressure that he was anticipating in the spring of 2010. In one excluded email, he stated, "It looks like i'll need to sell my house if I don't create income **781 by spring." And by the end of February 2010, only weeks before the murder, Greenspan reported that, although *727 his business had improved, that improvement was insufficient. In excluded portions of one email from February 23, 2010, Greenspan stated, "We are experiencing a slight increase in pt volume though it's miniscule after our losses. *** This month i'll need every dollar I can get."
As a result, we reject the state's argument that the excluded emails were merely cumulative of the admitted emails. Because the primary defense theory required the jury to believe that Greenspan had a financial motive to rob defendant, we cannot say that those additional facts and inferences were unlikely to influence the jury's verdict. We therefore conclude that the trial court's error in excluding the emails as inadmissible hearsay was not harmless.
III. CONCLUSION
The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

The trial court merged the two robbery counts into one and merged the murder counts with the aggravated murder count.

That definition of hearsay is subject to qualifications not relevant here. See OEC 801(4) (providing qualifications).

And that limit has a limit. The state of mind exception allows statements of memory or belief to prove the fact remembered or believed if the statement "relates to the execution, revocation, identification, or terms of the declarant's will." Id. This case, however, does not relate to a declarant's will.

The court's analysis of the hearsay issues was brief because the parties' primary dispute before that court was about the relevance of the emails.

In its briefing to this court, the state argued that the trial court excluded the email statements based on OEC 403. But there is no record evidence to support that argument. The trial court, instead, expressly stated that it excluded the email statements based on relevance and hearsay.

We rely on Clegg only for its explanation that the content of a statement includes both direct and indirect assertions. Our citation to Clegg does not indicate agreement with the admission of the victim's out-of-court statement or its use at trial.