220 April 30, 2025 No. 382

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANNY JOE ROBERTS,
*Defendant-Appellant.*

Washington County Circuit Court
20CR36150; A181422

Andrew Erwin, Judge.

Argued and submitted March 3, 2025.

Jedediah Peterson argued the cause for appellant. On the briefs were Ryan T. O'Connor and O'Connor Weber LLC.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for two counts of first-degree sodomy, ORS 163.405, and two counts of first-degree sexual abuse, ORS 163.427. On appeal, defendant first contends that during the state's rebuttal closing argument, the prosecutor impermissibly argued to the jury that defense counsel had "fudged." In defendant's view, the trial court erred by overruling his objection to that statement and by denying his subsequent motion for a mistrial. Second, defendant challenges the admission of testimony from the complainant's friend describing a nightmare the complainant had about defendant. Defendant argues that the testimony was irrelevant under OEC 401 and unduly prejudicial under OEC 403, and that it constituted inadmissible hearsay.

As explained below, we agree with defendant that the prosecutor's statement was improper and that the trial court erred in overruling his objection to it. However, we also conclude that the prosecutor's statement did not unfairly prejudice defendant or deny him a fair trial. Second, we conclude that the testimony concerning the complainant's nightmare should have been excluded on relevancy grounds because the evidence did not demonstrate a nexus between the nightmare and the alleged abuse. That error was not harmless because the prosecutor emphasized the testimony in closing argument as evidence of the complainant's credibility. Accordingly, we reverse and remand.

We briefly state the facts necessary to provide context for our decision and supplement those facts in the discussion of each assignment of error. In 2020, defendant's granddaughter, K, disclosed to a mental health therapist that defendant had sexually abused her from the time she was in kindergarten until she was in the third or fourth grade. After making that initial disclosure, K met with a school resource officer at her high school, and later, she was also interviewed at Child Abuse Response and Evaluation Services (CARES) Northwest.

At trial, the state called a number of witnesses, including K, K's mother and father, and K's friend, D.

Defendant testified in his own defense and denied the allegations against him. The jury found defendant guilty of two counts of first-degree sodomy and two counts of first-degree sexual abuse, and it acquitted him of one count of first-degree sexual abuse.

On appeal, defendant first contends that the prosecutor engaged in an impermissible personal attack against defense counsel during the state's rebuttal closing. In defendant's closing, defense counsel argued that K had fabricated the allegations against defendant and highlighted certain inconsistencies between K's statements to the therapist, the resource officer, and the interviewer at CARES concerning the abuse. For example, defense counsel emphasized that K did not report to either the therapist or resource officer that defendant had performed oral sex on her, forced her to touch his genitals, or touched her buttocks, although she later described those incidents in detail during the CARES interview.

In rebuttal, the prosecutor stated,

"So, the inconsistencies, I knew [defense counsel] was going to talk about that. So let's be clear, an inconsistent statement is me saying, 'Last weekend I went skiing at Mount Hood Meadows,['] and then two days later I tell friends, 'Hey, yeah, last weekend I was at Va[i]l[] skiing.' That's an inconsistent statement, things cannot coexist one with the other. That's an inconsistent statement.

"*What [defense counsel] did in his closing argument was he fudged.* He used inconsistent—"

At that point, defendant objected, and the trial court overruled that objection on the basis that "[t]his is argument; [the prosecutor is] simply making that particular argument." The prosecutor continued, arguing that defense counsel had incorrectly used the term "inconsistent" to describe K's statements:

"[THE PROSECUTOR]:  \* \* \*  The absence of information compared to the presence of information is not an inconsistent statement. It's not.

"How many times in his closing argument did [defense counsel] try to argue that the absence of [K] saying—

"THE COURT:    [Prosecutor], I'm going to—I'm going to direct you stay away from, kind of, labeling closing argument and just deal with—with the argument itself."

After arguments concluded, defendant moved for a mistrial, relying on *State v. Lundbom*, 96 Or App 458, 773 P2d 11, *rev den*, 308 Or 382 (1989), to argue that the prosecutor had engaged in an improper personal attack against defense counsel by claiming that he had "fudged." The state responded that the comment was directed at defense counsel's misuse of the word "inconsistent." The trial court denied defendant's motion:

"I do not take the context that [the prosecutor] was calling out a personal trait to [defense counsel] and labeling that, but rather was focused on the nature of the argument.

"And [the prosecutor] was very specific in context about going back and that was where it was. I – I certainly don't believe that that rises to the level of a mistrial in any way, shape, or form because it goes to, simply, the nature of the arguments that are before this jury and how they should review whether something is consistent or inconsistent as – as has been argued.

"So for all those reasons, I am denying the Motion For Mistrial. And I would also point out that I clearly, further into the argument, made it clear that [the prosecutor] should focus his arguments on [defense counsel's] arguments not on [defense counsel] at all, and so I was careful to do that as well."

"We review a trial court's decision to overrule an objection to closing arguments for abuse of discretion." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). Although a trial court enjoys "broad discretion" to control counsels' arguments, we must reverse "when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly." *State v. Rosenbohm*, 237 Or App 646, 649, 241 P3d 344 (2010) (internal quotation marks omitted). In conducting our review, "we view statements made by a party during argument in context, not in a vacuum." *State v. Mayo*, 303 Or App 525, 530, 465 P3d 267 (2020) (internal quotation marks omitted).

Similarly, we review a trial court's decision to deny a mistrial due to a prosecutor's improper argument for abuse of discretion. *State v. Worth*, 231 Or App 69, 74, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010). Even if a prosecutor's argument is improper, a jury instruction is generally sufficient to cure any prejudice, and accordingly, "a trial court does not abuse its discretion by denying a mistrial unless the effect of the prosecutor's conduct was to deny a defendant a fair trial." *Id.* at 74-75 (internal quotation marks omitted); *see also State v. Chitwood*, 370 Or 305, 311-312, 518 P3d 903 (2022) ("Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct. However, some prosecutorial statements may be so prejudicial that, as a practical matter, the bell once rung, cannot be unrung by such an admonishment." (Citations and internal quotation marks omitted.)).

A prosecutorial argument is improper if it infringes on a defendant's constitutional right to a fair trial, which "guarantees that a defendant shall be tried by a jury that will decide guilt based on evidence—not emotion or prejudice." *State v. Durant*, 327 Or App 363, 367-68, 535 P3d 808 (2023) (internal quotation marks omitted). Personal attacks on defense counsel, which urge a conviction based not on the evidence, but on the jury's "emotional response" to the defendant's attorney and defense case, are thus impermissible. *See Lundbom*, 96 Or App at 461-62 (holding that the trial court's failure to sustain the defendant's objection to the prosecutor's characterization of the defendant's expert witness and defense counsel as "pimps" and "hired guns" was reversible error because the remarks were "inappropriate," "highly likely to influence the jury," and "dangerously overshadow[ed] what [the] defendant's case [wa]s really about"); *see also, e.g.*, *State v. Brunnemer*, 287 Or App 182, 188, 401 P3d 1226 (2017) ("[V]iewing the prosecutor's statement that the defense was 'not asking for justice' within the context of the state's entire rebuttal argument, we conclude that the prosecutor improperly urged the jury to find [the] defendant guilty based, not exclusively on the strength of the state's evidence, but on a desire to punish defense counsel for [the complainant's] treatment at trial."). Further, unwarranted personal attacks diminish the jury's

perception of an attorney's competency and persuasiveness. *See State v. Knight*, 343 Or 469, 483, 173 P3d 1210 (2007) (concluding that a tape recording in which the defendant repeatedly made derogatory statements about his lawyer was unduly prejudicial under OEC 403 because "[a]fter the jury heard that [the] defendant was unimpressed with his lawyer's ability *** [n]o juror thereafter was going to view defense counsel as more credible and persuasive than the prosecuting attorney").

Here, we conclude that the prosecutor's statement that defense counsel "fudged" was improper because it conveyed to the jury that defense counsel had somehow acted dishonestly by questioning K's credibility as a witness and by describing some of her statements as inconsistent. The remark did not, as the state contends, simply challenge defense counsel's characterization of the evidence because the remark did not call upon the jury to assess defendant's and K's credibility. Rather, by calling into question defense counsel's candor, the prosecutor improperly encouraged the jury to consider defense counsel's character in deciding defendant's guilt. Defendant timely objected to the statement, and we conclude that the trial court erred in overruling defendant's objection.

Having determined that the prosecutor made an improper statement, we turn next to whether that improper statement "was likely to prejudice the jury unfairly." *Rosenbohm*, 237 Or App at 650. As explained above, to make this determination we consider the improper statement in the context of the entirety of the closing argument. After the trial court overruled defendant's objection to the remark, the trial court also advised the prosecutor to focus his rebuttal on defense counsel's argument itself. The prosecutor heeded that advice, and the focus of his argument returned to K's credibility and the state's evidence. Specifically, the prosecutor argued that K's failure to include certain details about the abuse during the initial interviews with the therapist and school resource officer was not inconsistent with K's statements to CARES Northwest. The prosecutor emphasized that interviewers at CARES Northwest are specially trained to speak with children about sexual abuse,

and therefore, it was not unsurprising or inconsistent that K made a more detailed disclosure in that setting. In the full context of closing argument, the prosecutor's statement that defense counsel had "fudged" was an isolated remark, and after receiving additional direction from the trial court, the prosecutor appropriately re-focused the argument on the strength of the state's evidence. In that context, it is unlikely that the prosecutor's statement influenced the jury to decide defendant's guilt based on defense counsel's character or that the statement removed defense counsel's ability to effectively advocate for defendant before the jury. We therefore conclude that the statements did not unfairly prejudice defendant. For the same reasons, we conclude that the prosecutor's statement did not deny defendant a fair trial, and accordingly, the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

Defendant next challenges the admission of testimony from K's friend, D, in which she described a nightmare K had about defendant. At trial, D testified that K told D that defendant had done something to her when she was younger, and in response, D told K that she would leave her phone on during the night if K ever needed to talk. K would sometimes call D, and one night in particular, K described a nightmare she had about defendant:

"Q   Okay. So after you told her that, were there times where [K] would call you late at night to talk about things?

"A   Yes. It had to be months later or so, but she would call me after having severe nightmares, often crying and hyperventilating. There was one specific night that I—I don't remember all the—all the nightmares and I usually didn't ask.

"But one time I did ask, and she said that she had a nightmare that her grandfather broke into her house and was holding her down and she couldn't breathe and anytime she tried to scream, nothing would come out. And then she felt like she was suffocating."

Defendant argues, as he did below, that D's testimony about K's nightmare was irrelevant under OEC 401 because "there was no nexus between the substance of the dream and a fact at issue." The state responds that

the evidence was relevant "because it was evidence of the trauma [K] suffered as a result of defendant's abuse," which "tend[s] to show that the alleged crime occurred." We conclude that the evidence of K's nightmares was irrelevant, and thus, the trial court erred by admitting the testimony.[1]

Whether evidence is relevant presents a question of law that we review for legal error. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. That rule requires a "rational relationship between the evidence offered and the substantive issues properly provable in the case." *State v. Turnidge (S059155)*, 359 Or 364, 450, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017) (internal quotation marks omitted). Generally, relevance is a "very low threshold for the admission of evidence." *State v. Naudain*, 368 Or 140, 149, 487 P3d 32 (2021) (internal quotation marks omitted). However, the relevance of certain evidence may "depend[] upon the existence of a particular preliminary fact," in which case "[t]he threshold issue is whether a proper foundation was laid to establish the relevance of the testimony." *State v. Beaty*, 127 Or App 448, 451-52, 873 P2d 385, *rev den*, 319 Or 406 (1994) (citing OEC 104(2) and OEC 104 Commentary (1981)).

We have previously concluded that the relevance of a statement made while the speaker is dreaming requires the proponent of that evidence to establish a nexus between the utterance and the alleged criminal conduct. *State v. Presley*, 108 Or App 149, 152, 814 P2d 550 (1991); *see also State v. Beden*, 162 Or App 178, 184, 986 P2d 94 (1999) (concluding

---

[1] In the alternative, defendant argues (1) that D's testimony was inadmissible under OEC 403 because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, and (2) that the testimony was hearsay that did not satisfy the state-of-mind exception under OEC 803(3). Because we conclude that the testimony was not relevant, we do not reach defendant's alternative arguments. Even if evidence is admissible under an exception to the hearsay exclusionary rule, as a threshold matter, the evidence must also be relevant. *See State v. Manrique*, 271 Or 201, 205, 531 P2d 239 (1975) ("The fundamental rule of evidence is that in order to be admissible evidence must be relevant, *i.e.*, have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence.").

that evidence of past sexual abuse of the child was relevant to the defendant's theory that the child had mistaken a nightmare for reality, where the child's report of abuse by the defendant was substantially similar in detail to the previous abuse and the morning after the alleged abuse by the defendant took place, the child had called out the name of her prior abuser while sleeping). In *Presley*, the defendant was charged with first-degree sexual abuse, and at his trial, the child victim's foster parent testified that, one night, while sleeping, the child cried out in her sleep, "Daddy, get off me. Daddy, stop, leave me alone." 108 Or App at 151. We concluded that the trial court erred by admitting that testimony because the relevance of the child's utterance depended on the existence of underlying facts that had not been established, and thus, the state failed to "demonstrate a nexus between the child's vocalization and the alleged incidents" of abuse. *Id.* at 152. Importantly, the evidence did not establish the substance of the dream, and "[i]nstead, the jury was allowed to *infer* that the child was dreaming about [the] defendant, that in the dream [the] defendant was attacking or molesting her and that, because [the] defendant had molested her in the dream, he had sexually abused her when she was awake." *Id.* (emphasis in original). We further concluded that the error prejudiced defendant because "the evidence evoked considerable sympathy for the child's distress" and because the "case rested on a jury determination of who was more believable—the child or [the] defendant." *Id.* at 153.

Here, we similarly conclude that D's testimony about K's nightmare should have been excluded as irrelevant because the state did not establish a nexus between the nightmare and the alleged abuse. Absent that nexus, K's description of her nightmare, by itself, was insufficient to support the factual inferences that the jury was permitted to make. Specifically, the jury was allowed to infer that the nightmare was a psychological symptom of trauma, that K's trauma stemmed from sexual abuse that had taken place years prior, and that, because defendant was the subject of her nightmare, K's trauma was inflicted by defendant. The fact that K unconsciously dreamt that defendant broke into her home, an act that he is not alleged to have committed in reality, cannot, by itself, support that inferential chain.

The state argues that jurors could use their common sense and personal experience to conclude that trauma from sexual abuse can manifest itself in the form of nightmares about the perpetrator years later. We disagree. Although many people experience traumatic events, determining whether a specific behavior is an established response to a particular event is not simply a matter of common sense. Something more is needed in terms of evidence before the jury could draw that conclusion. And the state did not present any evidence to establish that link. Moreover, the evidence did not establish that when K called D hyperventilating, she was suffering from trauma symptoms specifically, as opposed to experiencing the distress that might accompany a disturbing nightmare. Without such evidence, a rational factfinder could not reasonably infer that K's trauma resulted from sexual abuse years earlier and that that trauma manifested itself as a nightmare in which defendant engaged in fictitious misconduct unrelated to the alleged abuse. We therefore conclude that the trial court erred in admitting the testimony over defendant's relevancy objection.

Finally, we turn to whether the error was harmless. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm a judgment despite error if there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). An evidentiary error is more likely to affect a verdict if the error "relates to a central factual issue in th[e] case." *State v. Bement*, 363 Or 760, 779, 429 P3d 715 (2018) (internal quotation marks omitted). Even when evidence relates to a central factual issue, "its exclusion may be harmless if [the evidence] is merely cumulative of, instead of qualitatively different than, evidence presented to the factfinder." *Id*. (Internal quotation marks omitted.)

Here, we conclude that the error was not harmless. First, the evidence of K's psychological trauma related to a central factual dispute. As in *Presley*, the state's case rested largely on the jury's determination as to whether K was more credible than defendant. D's description of K's panic and fear after the nightmare was likely to elicit an emotional response from the jury and support a finding that K

was credible. Moreover, during closing argument, the prosecutor highlighted the testimony as evidence that K's allegations were truthful:

> "Again, [D], right, she's a good friend of [K], but she's not family, right? She's another third party who's giving you this evidence that is very consistent with [K] telling the truth.

> "And then additionally that [K], after hearing that her friend saying to her, 'Hey, I'll leave my phone on if you need to get a hold of me,' there were several instances where [K] called her having nightmares, and one time talked about how the nightmares were about the defendant breaking in. You—you heard what [D] said. This is all evidence, right? When you look at all of this together, it's overwhelming evidence that [K] was telling the truth about what happened."

Because the inadmissible testimony bolstered K's credibility, as expressly argued by the prosecutor during closing argument, the error could have influenced the jury's verdict such that the error was not harmless.

Further, the testimony was not cumulative of other evidence. As the state emphasizes, K's mother and father each testified that later in elementary school, K stopped wanting to go to her grandparent's house and would become visibly upset at the prospect of having to visit. Additionally, D testified that K called her on multiple occasions "crying and hyperventilating." Those pieces of testimony are qualitatively different from D's testimony describing K's nightmare. With respect to the testimony from K's parents, neither parent connected K's behavior to defendant or to any potential abuse until years later, after K disclosed the abuse to her therapist. Moreover, D's testimony about the nightmare describes K in acute distress and panic, while the parents' testimony described a more general resistance to visiting her grandparents. Finally, although D received multiple phone calls from K, D's description of K's nightmare explicitly connected K's distress to defendant. Under those circumstances, we cannot say that there was little likelihood that the error affected the verdict.

Reversed and remanded.