ORDER
The amended opinion filed on February 13, 2013 [706 F.3d 942] is amended by eliminating the following part of the opinion:
At Slip opinion page 13 at “When a color ” through to page 14 ending immediately before “Argument to the Jury.”
Insert in its place the following paragraph:
“On remand the plaintiff may prevail on the proposition that for the jail to apply the dress-out in pink procedure automatically to a man its own staff had identified as in need of psychiatric treatment was in deliberate indifference to his serious medical needs. Because of the evidentiary rulings of the trial court, the issue was not properly presented to the jury.
In addition, these rulings deprived the plaintiff of any foundation for medical testimony as to the probable cause of Vogel’s death. We do not reach the admissibility of the medical testimony because as the case developed under the district court’s *1050 rulings, the testimony lacked all foundation.”
The dissenting portion of the opinion filed on February 13, 2013 is amended by eliminating the following:
At Slip opinion page 15 delete <the third revision> and replace it with <the fourth revision >.
The dissenting portion of the opinion is further amended by eliminating the following part of the dissent:
At Slip opinion page 26 at <1 fail to understand why> through to immediately before <IV. Closing Arguments-.
In light of these amendments, Judges Noonan and Block vote to deny the petition for rehearing and recommend denying the petition for rehearing en banc. Judge N.R. Smith votes to grant the petition for rehearing and the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it. Fed. R.App. P. 35. The petition for rehearing and the petition for rehearing en banc are denied. No further petitions for rehearing or for rehearing en banc shall be entertained.
OPINION
NOONAN, Circuit Judge:
The central figure in this case, Eric Vogel, suffered from mental illness. Our system of laws is administered by rational human beings. It has always been a challenge to the legal system to interact with the irrational.
Yvon Wagner, as the personal representative of the estate of her brother, Eric Vogel, appeals the judgment of the district court in favor of the defendants, County of Maricopa and Joseph Arpaio. We reverse the judgment and remand for a new trial.
FACTS
Eric Vogel was born on December 21, 1964. By the age of six, he was showing signs of potential illness. His parents withdrew him from school when he was in the second grade, and he was thereafter home-schooled until he graduated from high school. He attended a community college for two semesters and part of a semester at Arizona State University. Thereafter, he simply lived at home.
Living at home, without further formal education, Vogel had no gainful employment and lived a remarkably restricted life. The windows of his home itself were covered with blankets and tape so that no one could see in. After his father’s death or departure, he lived alone with his mother. He left the home no more than two or three times to attend the funerals of relatives. In October 2001, when Vogel was 36, his sister, Yvon Wagner, visited the home and found him to be delusional, imagining that a snake was around his neck.
On the morning of November 12, 2001, for no apparent reason, Vogel left his home. Police responded to a report of a burglar in the neighborhood and spotted Vogel as a possible suspect. The first officer on the scene struggled to get control of him while Vogel shouted, “Kill me.” When a second officer arrived, Vogel stated that he, Vogel, must see the president. The police said they would accommodate him. He calmed down, and they drove him to the Phoenix jail.
In Arizona, common jails are kept by the sheriff of the county. Ariz.Rev.Stat. § 31-101. Joseph Arpaio, as the sheriff of Mar-icopa County, kept the jail to which Vogel was brought.
Vogel was put under arrest for assaulting a police officer. He completed a medical questionnaire, indicating that he had *1051 high blood pressure but no other health problems. A classification counselor interviewed him and placed a psychiatric hold on him. A psychological counselor examined him and concluded that he needed psychiatric care.
He was put in an isolation cell with a huge window opening the cell to the view of the jailers and to inmates. The next morning, November 13, Vogel was assessed by a psychological counselor as disoriented, paranoid, and psychotic. He told her that he was at the World Trade Center getting messages from satellites. She obtained an order for his transfer to the inpatient psychiatric unit at the jail.
That afternoon, Vogel was informed that he must “dressout.” In the argot of the jail, “to dress-out” was to change from one’s civilian clothes to prison garb approved by Sheriff Arpaio. The prison outfit included pink underwear. Vogel declined to change.
The “dress-out” prison officer summoned assistance — four other officers, each to hold an arm or a leg while Vogel’s clothes were changed. He was placed on the ground, stripped of all his clothes, and forced into the jail ensemble including the pink underwear. As the process went on, he shouted that he was being raped. The officers were aware that he was being transferred to the Psychiatric Unit. At the end of the “dress-out” Vogel was wheeled there in “a restraint chair.”
Vogel received treatment for a week and was then bailed out by his mother. On December 6, 2001, he was in his mother’s car when she had a minor traffic accident. The police were summoned. Before they arrived, however, Vogel left the scene and attempted to walk four or five miles to his home. He died the next day. The cause, according to the Maricopa County Medical Examiner, was acute cardiac arrhythmia.
PROCEEDINGS
On December 6, 2002, Vogel’s mother as representative of his estate began this action in Arizona Superior Court. It was removed by the defendants to the federal district court, which eventually returned the case to the state court. The plaintiff amended to assert a claim against the defendants for violation of 42 U.S.C. § 1983 for subjecting Vogel to an unreasonable search and seizure, denying due process and the equal protection of the laws, and acting with deliberate indifference to his serious medical needs. A claim was also asserted under the Americans with Disability Act, 42 U.S.C. § 12131, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as several claims under Arizona law. The case was transferred back to the federal district court.
In limine, the district court ruled that Vogel’s mother and sister could not testify to what he told them about events at the jail. The court also ruled that counsel could not refer to “pink underwear” unless he could show that the record contained “credible evidence” that Vogel was aware of the color of the underwear. The court also precluded the testimony of the plaintiffs expert, Dr. Spitz, that Vogel’s death was in part caused by the “dress-out,” thereby preventing the issue of liability for the death from reaching the jury. The court also limited the testimony of Dr. Esplin.
Before trial began, Vogel’s mother died and his sister Yvon Wagner replaced her as the representative of the estate.
At the close of the trial, the court denied plaintiffs counsel the opportunity to make a rebuttal.
The jury returned a verdict for the defendants on each count. This appeal followed.
*1052 DISCUSSION
We review evidentiary rulings for abuse of discretion and reverse if the exercise of discretion is both erroneous and prejudicial. As Judge Smith points out, it is not entirely clear whether construction of a hearsay rule is a matter of discretion or a legal issue subject to de novo review. Compare United States v. Stinson, 647 F.3d 1196, 1210-11 (9th Cir.2011), with United States v. Ortega, 203 F.3d 675, 682 (9th Cir.2000). We need not resolve the ambiguity here because our conclusions would be the same under either standard. We begin with the ruling limiting the testimony of Yvon Wagner.
Exclusion of Wagner’s testimony. Wagner in her deposition stated:
He [her brother] felt he was being raped. He felt one of the officers attempted to put his penis in his mouth and that he had to.keep his mouth so tight that he bruised his outer lips to avoid being accosted that way.
He was sure they were going to rape him. He hollered to people. He was sure that all the inmates heard him saying who he was and that he was being raped and please help him. And they were, you know, have [sic] a party at his expense....
He believed he had been raped. He believed somebody took their penis out of their pants and attempted to insert it in his mouth. And that’s as close to— my brother was a virgin. He — 36 years old, never touched another woman. This was very, I’m sure, frightening for him.
In response to the motion in limine, Wagner made the same argument she makes now. She argued that her statements were
not being offered to prove the details of the incident at the jail. Her testimony is not to prove an actual rape, but instead to show her brother’s state of mind following his incarceration. Her testimony establishes] the impact- that the event had on Eric. Yvon can testify as to the statements he made, his tone of voice, and his state of mind in making them.
Federal Rule of Evidence 803(3) excepts from the general exclusion of hearsay “statements] of the declarant’s then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed[.]” The . “declar-ant” is the person who. made the out-of-court statement. See Fed.R.Evid. 801(b).
Indisputably, Wagner could have testified at trial about the impact the jail incident had on Vogel, his mood following the incident, how disturbed he seemed, and even what he thought happened to him diming the incident, all without putting inadmissible hearsay before the jury. None of this testimony would have been put forth in order to establish the truth of what he had said. Wagner proposed to testify about how extremely delusional Vo-gel was following the incident, and more importantly, the emotional impact the incident had on him, including how humiliated he now felt by the pink underwear. She was not asserting the truth of anything that Vogel said had happened to him in jail.
Her testimony was admissible not to prove “the fact remembered or believed” but the “mental feeling” of Vogel. As our dissenting colleague points out, the limiting language of Rule 803(3) bars “ ‘statements as to why [the declarant] held the particular state of mind, or what he might have believed that would have induced the state of mind.’ ” United States v. Emmert, 829 F.2d 805, 810 (9th Cir.1987) (quoting United States v. Cohen, 631 *1053 F.2d 1223, 1225 (5th Cir.1980)). The bar applies only when the statements are offered to prove the truth of the fact underlying the memory or belief. In Emmert, for example, the defendant sought to introduce his out-of-court statement that “he was scared because of the threats made by the agents.” 829 F.2d at 810.
Here, Vogel’s statements to his sister were offered to establish his state of mind, not that he was raped or that he went through the dress-out procedure. , The statements were offered to show his state of mind at the time of the conversation, thus satisfying any contemporaneity requirement. See United States v. Ponticelli, 622 F.2d 985, 991 (9th Cir.1980), overruled on other grounds by United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc). That Vogel was subjected to the dress-out was established by the testimony of the defendants’ employees. The jury could infer the connection between the dress-out and Vogel’s mental state. Exclusion of this evidence was erroneous.
The defense argument that Wagner lacked personal knowledge is mistaken. She had personal knowledge of how Vogel had been impacted by the incident. She testified as a percipient of what she had observed.
The court curtailed Yvon Wagner’s testimony further by not permitting her to testify to Vogel’s conversation with her where he gave his sense of humiliation at being forced to wear pink underwear or his sense of having been subjected to a rape. The court banned any testimony mentioning “rape” or “gang rape” unless counsel showed that the terms were not “unduly prejudicial.” As already noted, the court excluded reference to the color of the clothes put on Vogel unless there was credible evidence that “Vogel was aware of the color of the jail-issued underwear.”
The rulings as to “rape” and “gang rape” misconceived any testimony Wagner would have offered. She would have used the words to show her brother’s present state of mind, not his past experience.
As to testimony of Vogel’s perception of the color, Wagner’s testimony was to the current state of her brother’s mind when he spoke to her. His mind was focused on the implications of being dressed in pink. That he had been dressed in pink was not a delusion.' It was a fact, essential to his experience and to the Estate’s deliberate indifference and due process claims. The jury was asked to evaluate whether the jail’s measures were taken in furtherance of a legitimate goal or whethér they were, instead, punitive. The exclusion of any mention of “pink underwear” or “rape” delivered a second blow to the plaintiffs case.
That Vogel was delusional does not mean that he was incapable of seeing. If you pricked him, he bled. As his eyes saw the pink, his mind made the association of the color. So at least a jury could infer from the impact of the dress-out on Vogel, an impact apparent from his conversation with his sister.
Exclusion of references to the color pink. On remand the plaintiff may prevail on the proposition that for the jail to apply the dress-out in pink procedure automatically to a man its own staff had identified as in need of psychiatric treatment was in deliberate indifference to his serious medical needs. Because of the evidentiary rulings of the trial court, the issue was not properly presented to the jury.
In addition, these rulings deprived the plaintiff of any foundation for medical testimony as to the probable cause of Vogel’s death. We do not reach the admissibility of the medical testimony because as the case developed under the district court’s *1054 rulings, the testimony lacked all foundation.
Argument to the Jury. The district court abruptly eliminated the plaintiffs opportunity for rebuttal argument. No good reason was given for this disappointment of the plaintiffs legitimate expectation. If the court, intends to restrict rebuttal, the litigants should be so advised prior to the argument.
Counsel for .the county suggested that Vogel’s family had not provided adequate care for Eric Vogel. The argument was irrelevant and improper.
For the reasons stated, the judgment of the district court is REVERSED and the case is REMANDED for proceedings in accordance with this opinion.